'

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICK OTIS NELSON,                             No. C-11-0313 EMC (pr)

        Petitioner,

       v.                                        **ORDER OF DISMISSAL**

D. K. SISTO,

        Respondent.

_____/

## I.   INTRODUCTION

Patrick Otis Nelson, a *pro se* prisoner, filed this action for a writ of habeas corpus to challenge his 2000 conviction in Humboldt County Superior Court. Respondent has moved to dismiss the petition as untimely, and Nelson has opposed the motion. For the reasons discussed below, the Court finds the petition to be barred by the statute of limitations and dismisses it. Due to the untimeliness of the petition, the Court does not reach respondent's other argument urged in support of dismissal, *i.e.*, that the petition contains some unexhausted claims.

## II.   BACKGROUND

A.   Conviction, Appeal and State Habeas Proceedings

Following a jury trial in Humboldt County Superior Court, Nelson was convicted of two counts of residential robbery, first degree burglary, unlawfully taking a vehicle, grand theft of a firearm, and possession of a firearm by a felon. Sentence enhancement allegations of acting in concert and being armed with a firearm were found true, and Nelson admitted that he had sustained a

1   prior strike conviction, a prior serious felony conviction, and a prior prison term.  Nelson was

2   sentenced to 20 years in state prison.

3          The California Court of Appeal's opinion described the evidence of the criminal episode.

4   Nelson, co-defendant William Casner and a third person "carried out robberies at the isolated rural

5   residence of Cynthia G. and her son Chris D., with whom [Nelson and Casner] were acquainted.

6   During the course of the robberies, Casner shot Chris in the head with a shotgun, resulting in only

7   relatively minor injuries from a projectile's glancing blow to the victim's head." *People v. Casner,*

8   *et al.,* 2001 WL 1357399, *1 (Cal. Ct. App. 2001). They robbed the victims of guns, marijuana, cash

9   and Cynthia's truck. *Id.* at *2.  Both victims identified Nelson and Casner as two of the three men

10  who had robbed and assaulted them. *Id.* at *3. Also, the police found an abandoned truck less than

11  half a mile away, "smashed into a tree.  Cynthia identified this truck as the vehicle [Nelson and

12  Casner] had driven when they visited" two months earlier. *Id.* at *2.  Inside the truck were

13  Cynthia's gun that had been taken during the robbery, two shotguns, marijuana, a Bible with

14  Nelson's name in it and an envelope bearing Nelson's name. *Id.* at *2. Nelson called no witnesses

15  in his defense.  Casner testified.  During his testimony, Casner admitted knowing the two victims

16  and having visited their house on previous occasions, denied any role in the robbery, and claimed

17  that the victims were trying to frame the defendants "in order to get revenge for another robbery and

18  assault" the defendants had perpetrated on the victims a few days before the reported robbery. *Id.* at

19  *3.

20         Nelson appealed.  On November 6, 2001, the California Court of Appeal affirmed the

21  judgment of conviction.  On January 16, 2002, the California Supreme Court denied his petition for

22  review.

23         Nelson filed several habeas petitions in state courts, starting in 2008.   Nelson's first state

24  habeas petition was filed in the California Court of Appeal on April 18, 2008, and denied on April

25  24, 2008.  His second state habeas petition was filed in the California Supreme Court on May 9,

26  2008, and denied on July 30, 2008.  His third state habeas petition was filed in the California Court

27  of Appeal on April 1, 2009, and denied on April 7, 2009.  His fourth state habeas petition was filed

28  in the California Supreme Court on May 1, 2009, and denied on June 17, 2009.  His fifth state

1   habeas petition was filed in the Humboldt County Superior Court on September 29, 2009, and

2   denied on October 20, 2009.  His sixth state habeas petition was filed in the California Supreme

3   Court on April 2, 2010, and denied on October 13, 2010.  The fifth and sixth state habeas petitions

4   were denied as untimely and for other procedural reasons.  *See* Docket # 1, p. 37 ("claims in habeas

5   petition must be timely filed, *In re Robbins* (1988) 18 Cal. 4th 770, 778," listed as sixth in the list of

6   superior court's reasons for denial of the habeas petition); Docket # 12, p. 41 (Supreme Court denial

7   of Nelson's habeas petition cites page 780 of *In re Robbins*, a page on which the California Supreme

8   Court had set out the untimeliness rule).

9       Nelson also filed several state court actions trying to obtain documents from his attorneys,

10  starting in 2007.  On February 15, 2007, Nelson filed a petition for writ of mandate in the California

11  Court of Appeal, seeking materials from his attorneys.  The petition was denied on February 23,

12  2007, with a suggestion that Nelson contact the California State Bar.  On June 5, 2007, Nelson filed

13  an accusation against his attorney in the California Supreme Court.  That petition was denied on

14  August 8, 2007.  On December 17, 2007, Nelson filed a petition for writ of mandate in the California

15  Supreme Court.  That petition was denied on November 28, 2007.  Nelson also filed another petition

16  for writ of mandate on January 15, 2010 in the California Court of Appeal.  That petition was denied

17  on January 22, 2010.

18      Nelson also filed three petitions for writ of mandate in the U.S. District Court for the Eastern

19  District of California on October 17, 2007.  All three petitions were denied because he was seeking

20  mandamus against a person or entity who was not an officer, agency or employee of the United

21  States.  *Nelson v. Carter*, E. D. Cal. No. CIV S-07-2207 GEB DAD (seeking documents from trial

22  counsel), was dismissed on February 22, 2008 and no appeal was taken.  *Nelson v. California State*

23  *Supreme Court*, E.D. Cal. No. CIV S-07-2209 LEW-KJM (seeking an order compelling state court

24  and California State Bar to compel attorneys to produce records), was dismissed on April 29, 2008,

25  and the dismissal was affirmed on March 6, 2009.  *Nelson v. Manjarrez*, E.D. Cal. No. CIV S-07-

26  2210-MCE-CMK-P (seeking documents from appellate attorney and co-defendant's appellate

27  attorney), was dismissed on May 7, 2008, and the dismissal was affirmed on March 6, 2009.

28

**United States District Court**
For the Northern District of California

B.      <u>Federal Habeas Petition</u>

Nelson's federal petition was dated December 31, 2010, and stamped "filed" on January 10, 2011 in the U.S. District Court for the Eastern District of California.  The petition later was transferred to this district.  As a *pro se* petitioner, he receives the benefit of the prisoner mailbox rule, which deems most documents filed when the prisoner gives them to prison officials to mail to the court.  *See Stillman v. LaMarque*, 319 F.3d 1199, 1201 (9th Cir. 2003).  The petition is deemed filed as of December 31, 2010, in the absence of evidence that it was given to prison officials any later than the signature date.

Respondent moved to dismiss the petition for writ of habeas corpus as barred by the statute of limitations.  In his opposition to that motion, Nelson argued that his lateness should be excused because he had been attempting to obtain files from his attorneys and was subjected to prison lockdowns.  Finding Nelson's opposition to be quite light on evidentiary support, the court required him to file a supplemental opposition.

> Petitioner must file and serve on Respondent a declaration (with any helpful documents he wants to attach to it), in which he provides details of his efforts to obtain the files and why he thought he needed his files.  He should describe what he did and when he did it, and describe any impediments to his efforts.  He also should explain what records from the court proceedings he did have and for how long he had them.  For any period he claims he was precluded from attending a library due to a lockdown, he should explain why he was unable to use a prison paging system to access legal materials.  The Court only wants factual information; no further legal brief is appropriate.

Order To Supplement Evidence, pp. 1-2.  Nelson sought and obtained an extension of the deadline, and eventually was allowed almost two months to assemble the declaration (Docket # 25) he filed on January 10, 2012.  In fact, Nelson had long been on notice that the timeliness of the petition was an issue: the court issued an order in April 2011 inviting a motion to dismiss for untimeliness and respondent filed a motion to dismiss the petition as untimely in August 2011.

C.      <u>Nelson's Quest For The Attorneys' Work Files</u>

Nelson's equitable tolling argument centers on his efforts to obtain the work files from his trial counsel, William Burl Cater, and his appellate attorney, Kieran Manjarrez.  Nelson had received the record on appeal, appellate briefs, and appellate court opinion by late 2001, and he thereafter was

4

1   attempting to obtain files that included things such as discovery, lab reports, police reports, tapes,

2   fingerprint evidence and attorney work product (collectively, the "work files"). *See* Docket # 1, p.

3   34. His uncontested evidence shows the following:

4           On November 30, 2001, Manjarrez sent a letter to Nelson informing him that his conviction

5   had been affirmed on appeal. Manjarrez stated in the letter that his representation would end when

6   the California Supreme Court denied the petition for review that he had filed. Docket # 25-1, p. 17

7   ("I am not appointed to represent you in federal court, and prosecuting your appeal either by writ of

8   certiorari to the U.S. Supreme Court and/or by writ of habeas corpus to the federal district court is

9   something you would have to do on your own."). Manjarrez forwarded to Nelson the clerk's

10  transcripts, reporter's transcripts, appellate briefs, petition for review, and California Court of

11  Appeal opinion. Docket # 25, pp. 2, 7; *see also* Docket # 25-1, p. 17.

12          In early 2002, Nelson sought assistance from a fellow inmate, who told Nelson "that he

13  needed the entire record, including discovery from his trial and appellate attorney in order to fully

14  evaluate claims not raised on appeal." Docket # 19, p. 8. Nelson then began his efforts to obtain the

15  work files from attorneys Manjarrez and Cater. For the first several years, the efforts of Nelson and

16  his family were limited. Nelson "would write, wait a few months write again and would still get no

17  response." Docket # 25 (Petitioner's Declaration And Efforts To Obtain Files), p. 3. His family also

18  made phone calls and sent letters to counsel that were ignored.

19          *Attorney Cater*: Nelson was unsuccessful in his efforts to obtain the work files from attorney

20  Cater. Nelson and his family tried informal requests for several years. *See* Docket # 25-2, p. 68

21  ("Since 2001, a letter would be sent, everyone would wait for three of (sic) four months, and at first,

22  six months. Then another request would be sent. Again and again for years with no reply at all, so

23  it was obvious Petitioner was going to have to start formal requests and escalate from that.").

24  Starting in early 2007, Nelson requested help from the State Bar of California and the state courts.

25  *Id.* Nelson sent a letter to the State Bar on April 25, 2007, stating that Cater had not contacted him

26  as directed to by the State Bar. Docket # 25-1, p. 44. Nelson sent letters to Cater on April 26, 2007

27  and May 10, 2007, but the letters came back undelivered and marked "not at this address." *Id.* at 46,

28  47. Nelson sent a letter to the State Bar on May 16, 2007, asking for Cater's address. *Id.* at 22.

**United States District Court**
For the Northern District of California

1    Nelson informed the State Bar in a July 19, 2007 letter that Cater had not contacted him and that

2    Cater could not be located. *Id.* at 49. Nelson apparently never heard back from the State Bar in

3    response to this letter about Cater. *See* Docket # 25-2, p. 69. Nelson allegedly filed a complaint in

4    the California Supreme Court in 2007 about Cater, but never received a response from that court

5    about his complaint and apparently did not make further inquiries to the court about the filing. *See*

6    *id.* at 16.

7         *Attorney Manjarrez*: Nelson made informal requests for his files from appellate attorney

8    Manjarrez for several years that were unsuccessful. He then began writing letters. His November

9    19, 2006, letter to Manjarrez appears to be the first letter in his letter-writing campaign to Manjarrez,

10   as he introduced himself as a client for whom Manjarrez had been appointed as appellate counsel in

11   September 2000, and wrote that "it was brought to my attention that I'm going to need your work

12   product, all police reports, pictures, everything concerning my case you have so as I can formulate

13   my Petition for Writ of Habeas Corpus." Docket # 25-1, p. 3; *see also id.* at 57 ("[i]n mid 2006,

14   Petitioner began his formal requests for delivery of the Trial and Appellant work product from

15   Attorney Manjarrez" in correspondence and phone calls).

16        In a letter dated May 24, 2007 – apparently written in response to earlier letters and to

17   Nelson's complaint to the State Bar of California – Manjarrez emphatically told Nelson that, as he

18   previously had advised Nelson in January 2007, "briefs were sent to you while your appeal was

19   pending and your appellate transcripts and any other relevant documents were forwarded to you on

20   issuance of the remittitur." *Id.* at 4. Manjarrez further told Nelson that he had sent or was then

21   sending all the documents he had for Nelson's case:

22             As I also explained to you, I was appointed to represent you on direct
               appeal and, as a matter of law, appeals are based on and limited to the
23             written transcript and court records of the case which normally do *not*
               include police reports, trial discovery papers or the trial attorney's file.
24             If any such reports had been included or obtained for any reason, they
               would have been sent with your transcripts. I suggested that you
25             contact your trial counsel if you wanted those reports. [¶ ] Lastly, as I
               have also explained to you, as your appeal closed out six years ago,
26             any *copies* of briefs, routine motions, letters and papers I may have
               had were transposed to disk. I do not make or keep copies of the
27             record and transcript on appeal and your digitized file does *not* include
               these transcripts. For the reasons stated, it also does not include police
28             reports or your trial counsel's file. [¶ ] I am enclosing herewith print

**United States District Court**
For the Northern District of California

1    outs of your digitized file: including routine paperwork and motions,
2    correspondence, notifications, notes and briefs on your behalf.

3    *Id.* at 4-5.

4          Apparently disbelieving that Manjarrez's statement that he had no other files, Nelson

5    thereafter filed petitions for writ of mandate in state and federal courts.  None were successful.

6          Nelson also apparently contacted the First District Appellate Project ("FDAP"), the entity

7    that coordinates appointment of appellate counsel for indigent defendants, such as the appointment

8    of Manjarrez to represent Nelson. In a September 15, 2008 letter to Nelson, the FDAP assistant

9    director forwarded a requested complete abstract of judgment and copies of the sentencing minutes,

10   stated that his office "does *not* have any transcripts or other trial court records," and explained that

11   Manjarrez "has no further documents in his possession and it (sic) not withholding any document

12   from you." *Id.* at 6; *see id.* at 22.  In response to a September 22, 2008 letter from Nelson, the FDAP

13   assistant director forwarded copies of the appellate briefs, the California Court of Appeal opinion,

14   and "[m]iscellaneous other appellate documents in our files (notices, extension requests, etc.)." *Id.*

15   at 7.  The letter also once again informed Nelson that Manjarrez already sent the materials in his file

16   to Nelson, and "[c]onsequently, there is no point in taking further efforts (correspondence, motions

17   to various courts, etc.) seeking to compel Mr. Manjarrez to provide you with materials he doesn't

18   have." *Id.*  Nonetheless, Nelson filed yet another unsuccessful petition for writ of mandate in the

19   California Supreme Court in 2010.

20         Nelson also tried to obtain documents pertaining to his case from other sources in 2007.

21   Nelson tried unsuccessfully in 2007 to obtain files from attorney Carolyn Fershtman, the attorney

22   who represented his co-defendant on appeal, asserting a legally implausible theory that a person has

23   a right to the work product of another person's attorney.  *See id.* at 24, 25.  He tried in 2007 to obtain

24   documents from the Humboldt County District Attorney's Office via something in the nature of a

25   Freedom Of Information Act request.  *See*  Docket # 25-2, pp. 106-112.  The district attorney

26   provided some documents on September 19, 2007, but Nelson did not believe he had received the

27   entirety of the prosecutor's file based on the non-sequential pagination of the documents produced.

28

United States District Court

For the Northern District of California

1  *Id.* at 113.  Nelson also sent a letter to the Humboldt County Conflict Counsel (i.e., the office that

2  had appointed Cater to work for Nelson) to obtain release of the work files for his case.  Docket

3  # 25-1, p. 50. There is no evidence that Nelson received any files as result of that letter.

### III.   DISCUSSION

A.    Nelson's One-Year Limitations Period Started On April 16, 2002

6          Petitions filed by prisoners challenging non-capital state convictions or sentences must be

7  filed within one year of the latest of the date on which:  (1) the judgment became final after the

8  conclusion of direct review or the time has passed for seeking direct review; (2) an impediment to

9  filing an application created by unconstitutional state action was removed, if such action prevented

10  petitioner from filing; (3) the constitutional right asserted was recognized by the Supreme Court, if

11  the right was newly recognized by the Supreme Court and made retroactive to cases on collateral

12  review; or (4) the factual predicate of the claim could have been discovered through the exercise of

13  due diligence.  28 U.S.C. § 2244(d)(1).

14          Here, the judgment became final and the limitations period began on April 16, 2002, 90 days

15  after the California Supreme Court denied review.  *See Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir.

16  1999) (direct review period includes the period during which the petitioner could have sought

17  further direct review, regardless of whether he did so).  The presumptive deadline for Nelson to file

18  his federal petition was April 16, 2003.  He missed that deadline by more than seven years, so unless

19  he qualifies for substantial tolling, the petition is untimely.

B.    No Statutory Tolling For Nelson

21          The one-year limitations period will be tolled for the "time during which a properly filed

22  application for State post-conviction or other collateral review with respect to the pertinent judgment

23  or claim is pending." 28 U.S.C. § 2244(d)(2).  Nelson receives no statutory tolling because his first

24  state habeas petition was not filed until April 18, 2008, more than five years after the one-year

25  limitations period had expired.  *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003)

26  ("[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before

27  the state petition was filed," even if the state petition was timely filed).  Although a petitioner might

28  be entitled to statutory tolling if enough of the gap between the conclusion of direct review and the

filing of the first state collateral challenge is equitably tolled, that is not an issue here because Nelson does not receive equitable tolling to bridge the five-year gap between conclusion of direct review and the commencement of the state court habeas activity.[1]

The petitions for writ of mandate that Nelson filed to try to obtain files from attorneys do not result in any *statutory* tolling under § 2244(d)(2) because none was an "application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." *See generally Wall v. Kholi*, 131 S. Ct. 1278, 1285 (2011) ( "'collateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process"); *Ramirez v. Yates*, 571 F.3d 993, 999-1000 (9th Cir. 2009) (no statutory tolling for discovery motions because they did not challenge conviction and instead sought material petitioner claimed might be of help in later state proceedings); *Malcom v. Payne*, 281 F.3d 951, 957 (9th Cir. 2002) (state petition for clemency is not an application for "State post-conviction or other collateral review" for AEDPA purposes and therefore does not toll the limitations period under § 2244(d)(2)).

C.   Equitable Tolling Does Not Save The Late Petition

The § 2244(d) limitations period can be equitably tolled for a petitioner who shows (1) that he pursued his rights with reasonable diligence and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *See Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010). Here, Nelson offers two equitable tolling arguments: his access to the law library was limited by lockdowns at his first prison and he was unable to obtain the work files from his attorneys.

---

[1] Even if Nelson was able to bridge the gap between the conclusion of direct review and the beginning of the state habeas activity, his federal petition would still be untimely, but under a different calculation. Specifically, the fifth and sixth state habeas petitions had been rejected as untimely and therefore would result in no statutory tolling for those petitions. *See Carey v. Saffold*, 536 U.S. 214, 226 (2002); *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007) (denial of petition with citation to *In re Robbins*, 18 Cal.4th 770, 780 (1998), at page opinion discusses timeliness determinations was clear denial on timeliness grounds and therefore petition was neither "properly filed" nor "pending"). As a result, there was no tolling during the 18 months between the denial of the fourth state petition and the filing of the federal petition. There also was a gap of eight months between the denial of the second state habeas petition in the California Supreme Court and the filing of the third state habeas petition in that same court for which there would be no tolling because both petitions were filed in the same level court. *See Delhomme v. Ramirez*, 340 F.3d 817, 821 (9th Cir.2003). Without any tolling for just these 26 months, the federal petition would have been filed more than fourteen months after the AEDPA deadline.

1          1.          Prison Lockdowns And Limited Law Library Access

2          Nelson urges that several prison lockdowns "that lasted months each time, one even lasted a

3   year" in a prison in which he was housed until 2005 impeded his ability to do research.   Docket

4   # 25, p. 2.  He alleges that the paging system at the prison did not enable effective legal research

5   because he was a layman and did not know what legal materials to request though the paging

6   system. *Id.* at 8.

7          The circumstances he describes are nothing more than routine prison circumstances that most

8   habeas prisoners face and did not amount to extraordinary circumstances or make it impossible for

9   him to file on time.  "Ordinary prison limitations on . . . access to the law library and copier" do not

10  amount to extraordinary circumstances or make it impossible to file on time. *Ramirez v. Yates*, 571

11  F.3d 993, 998 (9th Cir. 2009); *see, e.g., Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010)

12  (prisoner's *pro se* status, law library missing a "handful" of reporter volumes, and reliance on inmate

13  helpers who were transferred or too busy to attend to his petitions are not extraordinary

14  circumstances "given the vicissitudes of prison life").  Nelson does not claim a complete denial of

15  law library access.  Nor does he offer any evidence that he actually attempted to use the resources –

16  i.e., to visit the library or obtain materials through the paging system – and was unsuccessful.  He

17  has not made a persuasive showing that he was pursuing his rights diligently and that some

18  extraordinary circumstance stood in the way of timely filing of the federal petition.  Further, the

19  prison lockdowns were alleged to have occurred at a prison from which he was transferred in 2005,

20  and he offers no explanation as to why that situation prevented him from filing a federal petition in

21  2006, 2007, 2008, 2009, or the first eleven months of 2010.

22          2.          Efforts To Obtain The Work Files For His Case

23          To summarize the evidence on Nelson's efforts to obtain the work files for his case:  A

24  fellow inmate told Nelson in early 2002 that he needed the work files for his case to prepare a

25  habeas petition.  Nelson and his family attempted every few months to contact appellate attorney

26  Manjarrez and trial attorney Cater from 2002 - 2006 to try to obtain the work files.  After four years

27  of non-response, Nelson began more vigorous pursuit of the work files.  With regard to attorney

28  Cater, Nelson wrote letters, filed a State Bar complaint, and filed petitions for writ of mandate.  By

United States District Court
For the Northern District of California

1    the end of 2007, Nelson reasonably should have known that he was not going to receive documents

2    from attorney Cater, as his telephone calls, letters, State Bar complaint and state petitions for writ of

3    mandate had failed to yield any documents from this attorney.  Unlike attorney Cater, attorney

4    Manjarrez eventually did respond to Nelson's requests, but had little to give him beyond that which

5    he had provided to Nelson in late 2001.  Manjarrez provided all the documents he had to Nelson on

6    May 24, 2007, and unequivocally notified Nelson that he had no more work files to produce to him.

7    By the end of 2007, Nelson reasonably would have known that he was not going to receive any more

8    documents from attorney Manjarrez, as the attorney had unequivocally told him so, and the State

9    Bar complaint and state court petitions for writ of mandate had not dislodged any more documents.

10   Nelson did obtain a few more documents – some from the District Attorney's office in September

11   2007, and some from the FDAP in September 2008, but there is no evidence that these were

12   necessary for the federal petition and/or had not previously been produced by Manjarrez. Nelson

13   also filed federal petitions for writ of mandate, but none of them were granted.

14           Nelson's efforts to obtain the work files do not support enough equitable tolling to make his

15   late petition timely for two independent reasons:  the absence of the work files was not an

16   extraordinary circumstance that prevented the filing of a timely federal petition, and Nelson was not

17   exercising reasonable diligence.

18           a.      The Extraordinary Circumstances Requirement

19           To obtain equitable tolling, the petitioner bears the burden of showing that "'some

20   extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at

21   2562.  Where an attorney's misconduct is sufficiently serious, as opposed to merely negligent,

22   equitable tolling may be appropriate. *See Holland*, 130 S. Ct. at 2564-65 (while earlier cases have

23   precluded the application of equitable tolling to "garden variety claim[s] of excusable neglect[,]"

24   serious attorney misconduct may constitute extraordinary circumstances, even if it does not include

25   proof of bad faith, dishonesty, divide loyalty, mental impairment and the like) (citations omitted);

26   *see, e.g., id.* at 2564 (more than mere negligence was suggested by evidence that (1) attorney failed

27   to file federal petition on time despite death penalty client's many letters emphasizing the

28   importance of doing so; (2) attorney apparently did not do the research needed to learn the proper

filing deadline, despite client's letters identifying the applicable legal rules; (3) attorney failed to inform client about the crucial decision of the state supreme court, despite client's requests for the information; and (4) attorney failed to communicate or respond to letters from client over a period of years); *Doe v. Busby*, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (finding extraordinary circumstances where attorney failed to file a timely petition despite numerous promises to the contrary; petitioner's three-and-a-half year delay in eventually filing a pro se petition attributable to having been deceived, bullied and lulled by apparently inept and unethical lawyer); *Porter v. Ollison*, 620 F.3d 952, 959-61 (9th Cir. 2010) (attorney's misconduct and eventual resignation after facing disciplinary proceedings for running habeas corpus "writ mill" constitutes extraordinary circumstances; remanding on issue of whether petitioner is or is not entitled to equitable tolling because of lack of diligence or because attorney's egregious conduct did not prevent petitioner from filing timely petition); *Spitsyn v. Moore*, 345 F.3d 796, 800-01 (9th Cir. 2003) (equitable tolling appropriate where attorney was retained to file and prepare petition, failed to do so, and disregarded requests to return files pertaining to petitioner's case until well after the date the petition was due; remanding on issue of whether petitioner exercised reasonable diligence).[2]

Assuming arguendo that the attorneys engaged in serious misconduct (rather than mere negligence) in not delivering work files to Nelson so that the absence of the work files could be an extraordinary circumstance, it is still necessary that there be a causal connection between the absence of the work files and the late filing.  Tolling will not be allowed where the petitioner fails to show any "causal connection" between the grounds on which he asserts a right to equitable tolling and the inability to timely file a federal petition.  *See Gaston v. Palmer*, 417 F.3d 1030, 1034 (9th Cir. 2005) (no equitable tolling for self-representation on appeal, or physical and mental disabilities because no evidence they precluded timely filing), *amended* 447 F.3d 1165 (9th Cir. 2006); *see also*

---

[2]  Nelson relies heavily on *Spitsyn*, but that case is factually distinguishable in two respects. In *Spitsyn*, there is no indication that the attorney had turned over any part of the case file to the client, whereas Nelson had a large portion of his case file.  Also, the failure to turn over the file in *Spitsyn* was coupled with the attorney's failure to file the habeas petition he had been hired to file, whereas Nelson labored under no impression that counsel was preparing his petition.  It was a combination of the circumstances that led the *Spitsyn* court to conclude that the attorney's conduct was sufficiently egregious to justify equitable tolling.  *See Spitsyn*, 345 F.3d at 801.

United States District Court
For the Northern District of California

1  *Randle v. Crawford*, 604 F.3d 1047, 1058 (9th Cir. 2010) (no equitable tolling where the petitioner

2  had not shown a causal connection between the lack of access to the legal files and the delay in

3  filing the federal petition). Although having been given an opportunity to provide "details of his

4  efforts to obtain the files and why he thought he needed his files," Docket # 22, p. 1, Nelson has

5  failed to show a causal connection between the non-receipt of the work files and the delay in filing

6  the federal petition.

7  By the end of 2001, Nelson had the same basic materials that most habeas petitioners ever

8  have: the record on appeal, the appellate briefs, and the state court opinion. He also had his own

9  memory of the trial, which he could have consulted. *Cf. United States v. Battles*, 362 F.3d 1195,

10  1198 (9th Cir. 2004) (§ 2255 petition) (no delayed start of the limitations period because, even

11  though petitioner did not have access to trial transcripts, the facts supporting claims which occurred

12  at the time of his conviction could have been discovered if he "at least consult[ed] his own memory

13  of the trial proceedings"). The federal petition that Nelson finally filed in 2010 could have been

14  filed in 2002 with the materials available to Nelson in 2002.[3]  *See generally Ford v. Pliler*, 590 F.3d

15  782, 790 (9th Cir. 2009) (counsel's failure to provide a "complete set" of legal papers was not "the

16  cause of petitioner's untimeliness" and did not support equitable tolling because petitioner already

17  was aware of the factual basis of his claims). Thus there is no causal connection between the

18  asserted lack of access for legal files and the delay in filing the federal petition.

19  Nelson urges that he wanted to obtain the work files so he could prove his innocence. The

20  quest to find evidence of one's innocence does not warrant equitable tolling because proof of

21  innocence is not necessary (or usually appropriate) in a federal habeas proceeding. "Claims of

22  actual innocence based on newly discovered evidence have never been held to state a ground for

23  federal habeas relief absent an independent constitutional violation occurring in the underlying state

24  criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). A petitioner's ability to show

---

26  [3]  In his federal petition, Nelson asserted four claims for relief: (1) the jury was tainted by comments from a prospective juror; (2) "jury exposed to 'ex-felon' status improperly during

27  instructions and in verdict forms," Docket # 1, p. 14; (3) several jury instructions were prejudicial and "required the jury to find petitioner guilty of crimes the record cannot support," *id.* at 17; and (4)

28  the court "imposed sentences not supported by the evidence, nor deliberated on by jury beyond a reasonable doubt," *id.* at 20.

**United States District Court**
For the Northern District of California

his innocence might enable him to avoid a procedural default or dismissal for untimeliness but a freestanding actual innocence claim is not cognizable as a separate claim for habeas relief. That is, an otherwise untimely petition may proceed if the petitioner makes a showing of actual innocence, *see Lee v. Lampert*, 653 F.3d 929, 931 (9th Cir. 2011) (en banc), but that does not mean that a petitioner permissibly may delay filing his petition for the very purpose of looking for files in which he might find evidence to support a claim of innocence. Finally, it is not all clear what Nelson's actual innocence claim would consist of in light of his admission that he was present in the victims' home on the day of the crime and had "removed" the firearm (even though he alleged he did it with a good motive and did not retain possession of it), *see* Docket # 1, p. 18, and his co-defendant's admission that they had robbed the victims (but on a different day).

Nelson also suggests he was in search of unspecified *Brady* material and wanted to investigate *Brady* issues. Docket # 25, p. 5. *Brady* material would not be found in a defense counsel's work files, as it is by definition material that has not been disclosed to the defense. *See Brady v. Maryland*, 373 U.S. 83 (1963). He also lists various items he wanted from the attorney's work product files, Docket # 25, p. 6, to prove his innocence but those were not necessary for a federal petition for the reasons mentioned in the preceding paragraph. Nelson has shown only that he hoped to find something of value in the attorney's work files. To accept such speculation would allow any petitioner to avoid without good reason the statute of limitations.

It was an ill-chosen litigation strategy, rather than counsel's failure to produce the work files, that caused Nelson's extreme delay in filing his federal petition. Acting on advice received from another inmate, Nelson apparently decided he had to have the work files before he could begin work on his federal petition. He has not shown that he actually needed the work files to prepare his federal habeas petition. The bad advice received from another prisoner does not warrant equitable tolling. *See Marsh v. Soares*, 223 F.3d 1217, 1220-21 (10th Cir. 2000) ("The fact that an inmate law clerk was assisting in drafting the state petition does not relieve [the petitioner] from the personal responsibility of complying with the law"); *Henderson v. Johnson*, 1 F. Supp. 2d 650, 655 (N.D. Tex. 1998) (prisoners who assist other prisoners with legal matters "are not subject to the ethical and fiduciary obligations of lawyers. If their miscreant, inept, or negligent conduct were deemed

United States District Court
For the Northern District of California

1  sufficient of itself to toll the AEDPA limitation[] period, the time-bar would be rendered virtually

2  meaningless."); *cf. Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988) (prisoner's reliance on

3  allegedly incompetent writ writer is not "cause" to excuse a procedural default).  The absence of the

4  work files did not prevent Nelson from timely filing a federal petition.

5                 b.       The Reasonable Diligence Requirement

6         Furthermore, equitable tolling is not appropriate in the absence of reasonable diligence.  *See*

7  *generally  Holland*, 130 S. Ct. at 2565.  "The diligence required for equitable tolling purposes is

8  reasonable diligence, . . . not maximum feasible diligence."  *Id.* at 2565 (internal quotation marks

9  and citations omitted).

10         Nelson has failed to show that he acted with reasonable diligence to file his federal petition.

11  Nelson's evidence indicates that approximately every few months from 2002-2006, he or a family

12  member would try to contact the appellate attorney and, after that proved futile, they started trying to

13  contact trial counsel with similar frequency.  A handful of efforts per year for four years, by a

14  prisoner who knows he has a deadline to file the federal petition, simply is not reasonable diligence.[4]

15  Nelson's diligence in November 2006 and in 2007 does not overcome the preceding years of only

16  sporadic efforts.

17         Even assuming arguendo that Nelson's evidence could be viewed as showing reasonable

18  diligence in 2002-2007, the record quite clearly does not show reasonable diligence in the 2008 -

19  2010 period.  By the end of 2007, Nelson had no reasonable expectation of obtaining the files from

20  either attorney, due to Cater's overall non-responsiveness and Manjarrez's unequivocal statement

21  that there were no more files to turn over to Nelson.  Much of the post-2007 activity was wasted

22  effort, rather than diligence, with regard to the federal petition that was filed on December 31, 2010.

23         Nelson's petitions for writ of mandate in 2008 - 2010 in pursuit of the files from attorney

24  Manjarrez and attorney Cater do not demonstrate reasonable diligence under the circumstances – at

25  least after February 22, 2008.  The fundamental defect in his *federal* petition for writ of mandate –

26  i.e., that the federal mandamus statute did not allow the writ except as against employees, officers,

27  _____

28      [4] Nelson does not deny that he knew in 2001 that there was a time limit for filing the federal petition.  See Docket # 25-1, pp. 17, 42.

United States District Court

For the Northern District of California

and agencies of the federal government – was made known to him no later than February 22, 2008, when the first of his federal petitions was dismissed for this reason.  Assuming Nelson is entitled to any equitable tolling for the time during which he was seeking a federal writ to obtain the work files, that tolling would have ended on February 22, 2008, when the district court identified the fundamental flaw in the petition.  It was clear on that date that federal mandamus would never result in the production of any documents from his attorneys.  His continued pursuit of federal mandamus relief was not an exercise of reasonable diligence in attempting to file a federal habeas petition. With regard to the state petition for writ of mandate in 2010, Nelson has not shown why it was reasonable diligence to file another petition for writ of mandate in 2010 in the California Supreme Court after that court had denied his petition for writ of mandate in 2007.

With regard to the state habeas petitions, Nelson also filed several rounds of state habeas petitions, but makes no showing as to why he needed to file further state habeas petitions after the first round was completed on July 30, 2008, especially since he had the vast majority of his files since 2001.  Further, Nelson' significant delays between some of the state habeas petitions (e.g., an 8-month delay after the first round concluded on July 30, 2008, a 3-month delay after the second round concluded on June 17, 2009, and a 5-month delay after the denial of his fifth state habeas petition) further undermine any assertion of reasonable diligence.

This disposes the state habeas petition activity as potentially being a source of *equitable* tolling.  Footnote 1, above, explains why the state habeas petition activity would not make the federal petition timely if the *statutory* tolling rules applied to the state habeas petitions.

## IV.   CONCLUSION

Nelson has not shown as required under *Holland v. Florida* that he pursued his rights with reasonable diligence and that some extraordinary circumstance stood in his way and prevented timely filing. The limitations period will not be equitably tolled.  Nelson's federal petition was deemed filed on December 31, 2010, more than seven years after the limitations period had expired. The petition must be dismissed because it was not filed before the expiration of the habeas statute of limitations period.

A certificate of appealability will not issue because this is not a case in which "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Accordingly, Respondent's motion to dismiss is **GRANTED**.  (Docket # 11.).  The petition for writ of habeas corpus is dismissed because it was not filed before the expiration of the limitations period in 28 U.S.C. § 2244(d)(1).

The Clerk will close the file.


IT IS SO ORDERED.


Dated:  February 13, 2012

_____
EDWARD M. CHEN
United States District Judge